## No. 26081

## The People of the State of Colorado v. Carlos Raymond Marquez

(546 P.2d 482)

Decided February 9, 1976.                    Rehearing denied March 15, 1976.

256

John P. Moore, Attorney General, John E. Bush, Deputy, J. Stephen Phillips, Assistant, for plaintiff-appellee.

Busacca, Goldstein, Hazelton & Temko, Jeanne Busacca, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant was convicted by a jury of sale of a narcotic drug with intent to induce or aid another to unlawfully use or possess the drug, in violation of C.R.S. 1963, 48-5-20.[1] He was also found to be an habitual criminal under C.R.S. 1963, 39-13-1(1),[2] having been previously twice convicted of felonies in Colorado. Defendant was sentenced to a term of not less than twenty nor more than thirty years in the state penitentiary. We affirm in part and reverse in part.

The charges against defendant arose out of the following circumstances, as established by the People's evidence. On October 7, 1971, an anonymous informant, at the instance of the Denver police, arranged for a meeting of defendant with undercover agent Phil Perez, at defendant's residence in Denver. The informant and Agent Perez went to defendant's home, where the informant introduced Perez to the defendant. The informant announced they were there to purchase narcotics. They were invited into the house, where they sat on a couch in the living room. The informant asked defendant: "Do you have it?" Defendant replied, "Yes, I do." Defendant then went to a table and picked up a red balloon which contained heroin and handed it to the informant, who in turn handed it to Agent Perez. Perez then paid defendant sixty-five dollars.

Present in the room at the time when Perez and the informant entered was a young man, James Cortez, who was seated in a chair watching television. The evidence was not clear whether Cortez was present during the entire transaction, or whether he watched or overheard the narcotics sale. In any event, though he was available as a witness at trial, he was not called by either the People or the defendant.

Agent Perez and the informant then left the premises. It was not until December 8, two months later, that charges against defendant were filed. The delay in filing charges was purposeful, with the hope that defendant might lead the police to a "bigger dealer" in narcotics.

At trial, defendant elected not to testify and he presented no defense witnesses.

## I.

We agree with defendant's assertion that the evidence was insufficient to support the jury's verdict finding defendant guilty of sale of narcotics with intent to aid or induce another to unlawfully use or possess. In oral argument, the attorney general conceded this to be so.

The record is totally devoid of any evidence from which it could reasonably be inferred that defendant initiated the transaction, solicited the sale, persuaded or enticed the buyers to make the purchase, or sold with intent to aid or induce the buyers to use or possess the narcotic. In the ab-

---

[1] Now section 12-22-322, C.R.S. 1973.
[2] Now section 16-13-101, C.R.S. 1973, as revised and re-enacted.

sence of such evidence, or of further circumstances from which such an intent could reasonably be drawn, a conviction cannot stand under this section of the drug statute. *People v. Morris,* 190 Colo. 215, 545 P.2d 151; *People v. Steed,* 189 Colo. 212, 540 P.2d 323; *People v. Duran,* 188 Colo. 420, 535 P.2d 505; *People v. Patterson,* 187 Colo. 431, 532 P.2d 342; *People v. Bowers,* 187 Colo. 233, 530 P.2d 1282.

The conviction of defendant of sale with intent to aid or induce must therefore be vacated and set aside. The record, however, without dispute, supports the conviction of the lesser included offense of simple sale of narcotics under C.R.S. 1963, 48-5-2,[3] and upon remand the district court should enter a judgment of conviction under this section of the drug statute and re-sentence defendant accordingly.

## II.

■ Defendant argues that we should reverse for the reason that the court denied his pretrial motion to compel the prosecution to disclose the identity of the anonymous informant who set up and was present at the illegal drug transaction. It is clear that the informant was an eyewitness and an earwitness. It is not at all clear, however, and no showing was made by the defendant, that disclosure of the informant's identity would have in any way assisted his defense. In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, the Supreme Court stated:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

Each case must therefore be determined on its own facts. This is demonstrated by the diverse results obtained in the various cases concerned with the problem. *See, e.g., United States v. Herbert,* 502 F.2d 890 (10th Cir. 1974); *United States v. Williams,* 488 F.2d 788 (10th Cir. 1973); *United States v. Martinez,* 487 F.2d 973 (10th Cir. 1973); *People v. Duran , supra; People v. Musgrave,* 187 Colo. 135, 529 P.2d 313.

■ The foregoing cases suggest some of the many factors that must be considered in the balancing process mandated by *Roviaro, supra*: whether the informant was an eyewitness and earwitness to the criminal transaction and whether the informer himself is available or could, in the exercise of reasonable diligence, be made available; whether other witnesses to the transaction are in a position to testify; the likelihood that the testimony of the informer will vary significantly from that of other avail-

---

[3] Now section 12-22-302, C.R.S. 1973.

able or potentially available witnesses; whether the defendant himself knows the identity of the informant or could without undue effort discover his identity; whether the informant was deeply or only peripherally involved in the criminal transaction. And while, as the Supreme Court noted in *Roviaro*, the desirability of calling a witness is a matter for the accused rather than for the government, the accused must at least make some minimal affirmative showing of this need for disclosure. *Parlapiano v. Dist. Ct.,* 177 Colo. 36, 492 P.2d 626. It would defeat the purpose of the balancing process to require such disclosure upon the defendant's unsupported assertion that he desires it.

■ In the present case, the trial court conducted an evidentiary hearing on defendant's motion to disclose, and concluded under the facts that the public interest in protecting the anonymity of the informant outbalanced the need for disclosure to defendant. The court reasoned that defendant had available to him a witness to the transaction, James Cortez, who could have testified concerning the details of the transaction had the defendant chosen to avail himself of this source of information. We do not disagree with the court's conclusion where, as here, the defendant made no affirmative showing of his need for disclosure. Had he called the witness, James Cortez, at the pretrial hearing on the motion and demonstrated that the testimony of this witness would not have shed any light on the transaction — in that although present he did not observe or hear the transaction, or in fact he had left the room before the transaction occurred — then the court might have concluded, as it did in *People v. Musgrave, supra,* that in fact there were no witnesses to the illicit transaction who could shed light on the defendant's participation therein. Further, we observe that defendant made no showing that he in fact did not know the informant, who had first telephoned him to arrange the meeting and thereafter introduced defendant to the agent, Perez. Indeed, defendant's position at the pretrail hearing was that because of the two-month delay in the filing of charges against him he could not remember anything concerning the transaction with which he was charged.

Under these circumstances, we conclude the ruling of the trial court protecting the anonymity of the informant was correct.

### III.

■ Defendant attacks the constitutionality of the drug statute under which he was convicted. We observe that, even though his argument is now moot in view of our reversal of the conviction on the basis of insufficiency of the evidence, the constitutionality of the statute was upheld in *People v. Bowers, supra.*

■ It is also asserted that the habitual criminal statute is unconstitutional in that sentencing under it constitutes cruel and unusual punishment; and, further, that it denies those subject to it due process of law in violation of the federal and state constitutions. These arguments have been

answered in numerous cases, the most recent of which are *People v. Bergstrom,* 190 Colo. 105, 544 P.2d 396; *People v. Thomas,* 189 Colo. 490, 542 P.2d 387.

## IV.

We have considered defendant's other arguments for reversal concerning the testimony relating to a second visit to defendant's home by Agent Perez, and concerning the two-month delay between the illegal sale and defendant's arrest, and we find the arguments to be unpersuasive and without merit.

The judgment is reversed and the cause is remanded with directions to vacate the verdict of guilty and the judgment of conviction entered thereon, and to enter a judgment of conviction of simple sale under C.R.S. 1963, 48-5-2, and for re-sentencing of defendant.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE GROVES concurring in the majority of the opinion:

Without indicating that I express the thought of the author of *People v. Musgrave,* 187 Colo. 135, 529 P.2d 313 (1974), it may be interpreted as holding that the identity of an eye-ear witness must be disclosed irrespective of any showing beyond that of the informant. Such an interpretation makes a per se rule. Here, I think there must be a further showing before disclosure must be ordered. I do not follow such a possible interpretation of *Musgrave,* and concur in the majority opinion.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

I do not quarrel with the majority's statement that where disclosure of an unidentified informer is sought a court must determine on which side the balance must fall between the public interest in protecting the anonymity of an informer as against the need for disclosure to the defendant. That is the rule enunciated by *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

What concerns me here is my deep-rooted conviction that it is a fundamental right of one accused of a crime to know and confront any ear-eye witness which the state knows about in the transaction upon which the state brings charges. This is basic if a trial is a search for truth.

If the state would deny that right, it must, in my view, put forth its reason for doing so and then the balancing test comes into play. Here there was no evidence on the part of the state as to why it wished to protect the identity, not of a mere informant, but of an actual participant in

the transaction upon which the charge is based. Hence, I believe there was nothing in the record here upon which the trial judge could base a conclusion that the public interest in shielding the witness outweighed the right of the defendant to get at the truth. I would therefore reverse, and direct that upon a new trial the judge make his finding regarding disclosure of the witness based on evidence in the record.

MR. JUSTICE DAY authorizes me to say that he joins in this dissent.

MR. JUSTICE ERICKSON, dissenting:

I respectfully dissent. The majority decision, in my opinion, is patently inconsistent with this court's holding in *People v. Musgrave,* 187 Colo. 135, 529 P.2d 313 (1974). *See also People v. Duran,* 188 Colo. 420, 535 P.2d 505 (1975). *See generally, McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The factual background of the instant case is all but identical to the facts in the *Musgrave* case. In this case, the informant arranged the drug transaction by telephone with the defendant and introduced the defendant to Agent Perez at the time of the drug transaction. Not only was the informant an eyewitness and earwitness to the transaction, but he actively participated in the negotiations for sale. These facts track those which were the foundation for *Musgrave* point for point.

In *Musgrave,* the informant was instrumental in arranging the drug transaction and made the introductions which led to the sale of the drugs. He was present during the entire transaction and participated therein. We held in that case:

"When it was established that the purported informant was an eyewitness and earwitness to the sale and participated to the extent that he did, the court should have ordered disclosure of the informant's identity."

*See also People v. Duran, supra.*

The majority would distinguish the facts of the instant case on the basis that one James Cortez was also present in the defendant's residence at the time of the drug transaction. In my opinion, the presence of Cortez at the residence and his subsequent availability as a witness at trial in no way dilutes the merits of the defendant's claim that the informant should be disclosed.

In *Musgrave,* at least five other persons were present in the apartment where the drug transaction occurred, and several individuals actually observed the exchange. Nonetheless, we held that disclosure of the informant was required. In this case, only one other person was present, and Agent Perez was uncertain whether that person was even in the room at the time of the transaction. Perez testified that James Cortez, a minor, was sitting in a chair watching television when he and the informant first

entered the defendant's residence. He then stated that sometime, possibly before the actual exchange took place, Cortez left the room. Absolutely no evidence on the record suggests that James Cortez heard or observed the transaction in question. Additionally, Agent Perez was unable to recall the name of the informant. These facts demonstrate, in my view, the need for additional information to assist in the search for truth and to guarantee the defendant a fundamentally fair trial, in accordance with the requirements of due process of law.

In *Roviaro v. United States, supra*, the United States Supreme Court declared that the problem of the disclosure of the identity of a government informant is attended by no fixed rule, but is instead governed by a balancing test:

"The problem is one that calls for balancing the public interest in protecting the flow of information [to the police] against the individual's right to prepare his defense."

Considerations of fairness in this case outweigh, in my view, the public's interest in masking the identity of the informant.