The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Eduardo VAZQUEZ,
Defendant–Appellant.

No. 84CA1173.

Colorado Court of Appeals,
Div. II.

July 7, 1988.

Rehearing Denied Aug. 11, 1988.

Certiorari Granted (People) Feb. 6, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy E. Nelson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Peggy O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, Eduardo R. Vazquez, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession, distribution, and conspiracy to sell a schedule two controlled substance and sentencing under the special offender statute. He contends that there were grand jury abuses, that various searches were done without probable cause, that there were various evidentiary errors, and, that the special offender statute is unconstitutional. We agree in part and reverse.

In August, 1982, defendant, his family, and several other persons were brought to the attention of narcotics investigators as possibly involved in the importation and distribution of controlled substances. Investigators obtained "tips" from various informants and conducted surveillance of defendant's family. They obtained grand jury subpoenas for the telephone toll records of the Vazquez family's business and residence telephones. Pen registers were placed on the telephone lines, and, upon application by a 97 page affidavit to the district court in early February, 1983, authorization was obtained for wiretaps which culminated in the arrest of defendant and the search of several locations and automobiles. The affidavits in support of the wiretap applications included information from various informants, facts accumulated through surveillance, and information obtained from the toll records and pen registers.

The grand jury subpoenas were obtained in early September and December, 1982, and in mid-January, 1983, based on the affidavits of agents working with the Colorado Bureau of Investigation Strike Force.

One agent was sworn in as a grand jury investigator in December, 1982.

The court held that the agents investigating the case misused the grand jury process. It found that "subpoenas" were obtained from the grand jury absent an ongoing investigation. It also found that the records were used in a manner inconsistent with the secrecy requirements of the grand jury by being disclosed to persons who were not investigators nor under the required oath of secrecy. The court concluded that the officers involved merely used the grand jury process to circumvent Mountain Bell's policy not to release customer information without a judicial order.

The trial court nevertheless denied defendant's motion to suppress evidence obtained from use of the toll records and pen registers based on a good faith reliance by investigators on *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) which held that there is no requirement under the federal constitution for a warrant to install a pen register. Thus, the court held that there existed a statutory technical violation exception to the exclusionary rule. *See* § 16–3–308(2)(b), C.R.S. (1986 Repl. Vol. 8A).

Upon further consideration of the grand jury abuses at the hearing on defendant's motion for new trial, the court determined that its initial decision relative to the toll records and pen register had been in error. *See People v. Corr*, 682 P.2d 20 (Colo.1984); *see also People v. Sporleder*, 666 P.2d 135 (Colo.1983). The court nevertheless reaffirmed its determination that the prosecution had established sufficient probable cause in the affidavit for the wiretaps even if all the information from the toll records, pen registers, and any conclusory statements were omitted.

However, the court did not address the propriety of having admitted evidence of the toll records and pen register. Further, it did not excise information gained from such procedures before testing the residual evidence in the affidavits in support of probable cause.

After a jury trial in March, 1984, defendant was convicted of four counts: conspir-acy, possession, distribution, and special offender.

## I.

Defendant first contends that because the prosecution improperly obtained subpoenas authorizing it to obtain telephone toll records and pen registers in violation of the grand jury process, the court erred in failing to suppress evidence derived as a result of such violation of his Fourth Amendment rights. We agree and therefore reverse and remand for a new trial.

The "fruit of the poisonous tree" doctrine excludes evidence discovered as a result of a Fourth Amendment violation. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. McFall*, 672 P.2d 534 (Colo.1983). Thus, where a search pursuant to a warrant follows an illegal warrantless search, evidence acquired during the second search will be suppressed if it is tainted by the first illegal search. *People v. McFall, supra; People v. Turner*, 660 P.2d 1284 (Colo. 1983). To avoid application of the doctrine, the burden is on the prosecution to show that it obtained the evidence from an independent source untainted by illegal police conduct. *See People v. McFall, supra.*

Here, the court should have reviewed the affidavits in support of both the wiretap applications and the search warrants to determine if they established probable cause after the toll record and pen register information, and the evidence derived therefrom, were stricken. *See People v. Corr, supra.* Moreover, it is imperative that prior to the new trial the court enter specific findings on these issues in order that proper evidentiary decisions may be made during the course of trial.

## II.

Next, defendant argues that the prosecution failed to show an exhaustion of other alternatives prior to seeking authorization for the wiretaps. He also contends that there were insufficient facts to justify the

non-termination provisions of the orders. We disagree.

■ The requirements of an *ex parte* order for a wiretap, § 16–15–102(1)(a), C.R. S. (1986 Repl. Vol. 8A), are to be interpreted in a practical and common sense fashion to effectuate their purpose. *People v. Ingram*, 684 P.2d 243 (Colo.1984).

■ Contrary to defendant's assertion, there is no requirement that wiretapping be used only as a last resort, *see* § 16–15–102(2)(c), C.R.S. (1986 Repl. Vol. 8A), and the requirements of § 16–15–102(4)(c), C.R.S. (1986 Repl. Vol. 8A) may be satisfied if the application informs the judge of the difficulties encountered and the lack of success or danger in using conventional investigatory methods. *People v. Gable*, 647 P.2d 246 (Colo.App. 1982). Moreover, the wiretapping statute merely requires that the order authorizing or approving wiretapping specify the period of time in which an interception is authorized including a statement as to whether the interception automatically terminates when the described communication is first obtained. Section 16–15–102(5)(e), C.R.S. (1986 Repl. Vol. 8A). An order entered under that section may not be longer than the period necessary to achieve the objective of the authorization and is limited, absent an extension, to thirty days. Certain provisions mandating prompt execution are required to be in the order and minimization of the interception is required. *See* § 16–15–102(4), C.R.S. (1986 Repl. Vol. 8A). However, there is no requirement that specific findings be set forth detailing why the order does not automatically terminate when the described communication is first obtained.

■ As to the duration of the wiretap, where the target of an order is conspiracy and there is continuing conduct, the permissible duration of the wiretap is necessarily longer. *People v. Gable, supra; People v. Ball*, 639 P.2d 1078 (Colo.1982). The use of coded language, as here, is a factor among others to consider in determining if there was proper minimization of the interception. *People v. Gable, supra.*

■ Here, the record reflects that informants feared defendant and his organization and believed that he would kill any individual who disrupted his organization. Surveillance was ineffective since defendant would employ continued erratic driving techniques to thwart such surveillance. Thus, we conclude that there was a sufficient basis for use of wiretaps of the scope ordered.

### III.

Defendant also contends that the more restrictive standards derived from *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)`and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969) should be used to evaluate the existence of probable cause. We disagree.

Our supreme court has gone beyond the *Aguilar–Spinelli* test for probable cause and adopted the "totality of the circumstances" analysis outlined in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) which places particular importance on the value of corroboration of the details of an informant's tip by independent police work. *See People v. Pannebaker*, 714 P.2d 904 (Colo.1986). Furthermore, in *Peltz v. People*, 728 P.2d 1271 (Colo.1986), our supreme court approved the court of appeals' retrospective application of the "totality of the circumstances" test to a case which, as here, predated the decision in *People v. Pannebaker, supra. See People v. Peltz*, 697 P.2d 766 (Colo. App.1984), aff'd 728 P.2d 1271 (Colo.1986). *See also People v. Smith*, 685 P.2d 786 (Colo.App.1984); *People v. Sullivan*, 680 P.2d 851 (Colo.App.1984); *People v. Gallegos*, 680 P.2d 1294 (Colo.App.1983). That test continues to rely on former elements of probable cause determination—the informant's veracity or reliability and his basis of knowledge—but also places particular importance on the value of corroboration of the details of an informant's tip by independent police work. *People v. Rowerdink*, 756 P.2d 986 (Colo.1988).

Therefore, upon remand, the trial court may apply a practical, common sense analy-

sis to determine whether, when information derived from the illegal toll records and pen registers, as well as fruit of those improper searches, is deleted, probable cause nevertheless independently existed to authorize issuance of the wiretaps and search warrants in this case.

### IV.

Defendant further asserts that the trial court erred in refusing to strike from the warrant affidavits information obtained from Informant C, and refusing to provide for *in camera* examinations of the other informants. We agree.

██ Here, defendant independently obtained the identity and access to a person who claimed to be Informant C and was afforded an opportunity for an *in camera* hearing where Informant C appeared and testified contrary to the information attributed to him in the affidavits. At the conclusion of the hearing, the court refused to strike the information allegedly furnished by "C" based on its opinion of his incredibility and biased motive. In contrast the court noted the objectivity of the officer who testified in support of the affidavits submitted with the application for the wiretaps and the warrants. We reverse and remand the court's ruling as to disclosure of the informants' identities since the record reflects that the court neglected to apply a balancing test as provided by law.

██ A defendant requesting disclosure of a confidential informant's identity has the initial burden to make a showing that the informant will provide information essential to the merits of his suppression ruling. *People v. Rowerdink, supra.* He must establish that he has a reasonable basis in fact to believe either that the informant does not exist or that the informant did not give the police the information on which they purportedly relied. *People v. Rowerdink, supra; People v. Garcia,* 752 P.2d 570 (Colo.1988). In deciding whether an informant's identity should be disclosed, the trial court has the option of conducting an *in camera* hearing at which time the prosecution is required to present the informant for judicial interrogation. *People v.*

*Dailey,* 639 P.2d 1068 (Colo.1982). Ultimately, it must apply an ad hoc balancing test and weigh the "public interest in protecting the flow of information against the individual's right to prepare his defense." *People v. Garcia, supra* quoting *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). There are several factors in a five-part test that the court may consider. *See People v. Garcia, supra; see also People v. Marquez,* 190 Colo. 255, 546 P.2d 482 (Colo.1976). Generally, disclosure is justified if the defendant can show that the informant was an eyewitness or earwitness to the crime. *People v. Bueno,* 646 P.2d 931 (Colo.1982). Thus, the disclosure of the informants identity upon application of the balancing test is within the trial court's discretion. *See People v. Garcia, supra; see also People v. Bueno, supra.*

### V.

Defendant next contends that the trial court erred in admitting photographs of law books taken at his home, one of which was entitled *Handling Narcotic and Drug Cases.* Defendant alleges that these photographs were undisputably prejudicial even if they were relevant to the special offender count. In addition, he argues that admission of such photographs underscores the error in the denial of a bifurcated trial on the special offender issue. Because these issues may arise upon retrial, we will address them.

### A.

██ The special offender statute does not provide for a bifurcated trial. *People v. Garcia, supra.* It is analogous to the crime of violence enhancement statute rather than to the habitual criminal statute for which the general assembly expressly manifested the intent that certain procedural guarantees exist. *People v. Garcia, supra.*

### B.

We conclude that the photographs complained of by the defendant were relevant to show his knowledge and intent relative to the conspiracy and distribution of cocaine as offered by the prosecution.

As to relevancy, a three tiered analysis is necessary to determine 1) that the proffered evidence relates to a fact that is of a consequence to the determination of the action; 2) that the proffered evidence makes the existence of a fact of consequence to the determination of the action more probable or less probable than it would be without the evidence; and 3) whether the probative value of the evidence substantially outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Vialpando v. People*, 727 P.2d 1090 (Colo.1986).

 It is within the trial court's discretion to decide if otherwise relevant photographs are necessarily inflammatory or prejudicial to a defendant, and the court's decision will be reversed only upon a showing of an abuse of discretion. *People v. Cummings*, 768 P.2d 718 (Colo.App.1988); CRE 403. Photographs may be introduced to show any matter that a witness could describe in words. *People v. Cummings, supra.* Since direct proof of a defendant's state of mind is rarely available, resort must necessarily be had to circumstantial evidence. *People v. Chastain*, 733 P.2d 1206 (Colo.1987).

The record reflects that the exhibits admitted included an enlarged photo of the law book area to depict the book in question and an overall picture of that wall of defendant's library so as to locate the alleged prejudicial books among and relative to the other books in defendant's library. Thus, we conclude that there was no error in admitting these photographs. *See Vialpando v. People, supra; see also People v. Lowe*, 660 P.2d 1261 (Colo.1983) (letter written by defendant which was an admission or consciousness of his guilt was properly admitted).

## VI.

Defendant also contends that the special offender statute is unconstitutional. He challenges the statutes' constitutionality on a number of grounds: vagueness, equal protection, double jeopardy, and a failure to specify a *mens rea*.

Our supreme court has recently held that the special offender statute is constitutional. *See People v. Garcia, supra.* Due to our disposition here in part I, we need not address defendant's constitutionality claims which were not addressed in *Garcia.* See § 13-4-102(1)(b), C.R.S. (1987 Repl.Vol. 6A).

## VII.

Finally, we reject defendant's contention that the special offender statute requires a *mens rea.* It is well settled that the legislature may define certain acts as criminal without requiring proof of a mental state. *Bollier v. People*, 635 P.2d 543 (Colo.1981). Moreover, the special offender statute is a sentence enhancement statute. *People v. Garcia, supra; Felts v. County Court*, 725 P.2d 61 (Colo.App.1986).

## VIII.

Because of the result we reach here, we decline to address defendant's other contentions of error.

Accordingly, the judgments of conviction are reversed and this matter is remanded for a new trial consistent with the views expressed herein.

VAN CISE and NEY, JJ., concur.