The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Linda C. VILLANUEVA and Baltazar Villanueva, Defendants–Appellees.

No. 88SA26.

Supreme Court of Colorado, En Banc.

Jan. 23, 1989.

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Normando R. Pacheco, Denver, for defendants-appellees.

ROVIRA, Justice.

In this interlocutory appeal, pursuant to C.A.R. 4.1, the People challenge the trial court's order suppressing evidence. We reverse and remand for further proceedings consistent with the views stated herein.

I.

In January 1987, two individuals contacted officials of Lerner, a retail clothing store. In exchange for $1,500, they offered to reveal a location where stolen merchandise was being stored and sold. Lerner officials contacted the Thornton Police Department, and Detectives Coralee Covert and Tom Manka met the informants at a motel in Thornton, Colorado.

The individuals agreed to furnish information for which they were paid $200 each. The informants told police of a fencing operation at 1266 Elmwood Lane in unincorporated Adams County and provided a code word that could be used to gain entry into the house at that address. The informants also told police that they did not want to disclose their identities.

On February 5, 1987, Thornton Police Officer Amalia Lucero, in an undercover capacity, went to 1266 Elmwood Lane to determine whether the information given to the police was accurate. After using the code word provided by the informants, she was admitted into the house by a teenage girl, later identified as Cassandra. Cassandra took Lucero to the basement where several racks of clothing were located. Lucero browsed through the racks and noticed that the clothing bore the original price tags from various merchants. Cassandra told her that the clothing was new. Lucero selected three items of clothing with Lerner tags and purchased them for half the price marked on the tags.

As the purchase was completed, a short discussion took place concerning the arrival of new clothing. Cassandra wrote down a telephone number with the names "Linda" and "Cassandra" and gave it to Lucero.

The number, which was unpublished, was listed to the house at 1266 Elmwood Lane. A Lerner representative later identified the clothing as Lerner property and pointed out that the price tags were not torn in half along a perforated line as they would have been according to store procedure if they had been sold at a Lerner store.

On February 10, 1987, Lucero returned to 1266 Elmwood Lane after calling the number given to her during the first visit. She was admitted by a teenage girl named Bernadette and taken to the basement. There she was introduced to Cassandra, whom she had met on the previous occasion. She again purchased clothing for half the price marked on the original store tags. The purchased items were identified as Lerner merchandise and bore the price tags which were intact.

Later that evening, officers of the Thornton Police Department and the Adams County Sheriff's Department obtained and executed a search warrant for 1266 Elmwood Lane. The defendants, Linda and Baltazar Villanueva, the owners of the house, were at home. In the search, the officers seized several hundred items of clothing with attached merchant tags, clothing racks, checks and money, various documents establishing ownership of the house, numerous business records, and illegal narcotics.

Defendants were charged with two counts of theft by receiving while engaged in the business of buying, selling, or otherwise disposing of stolen goods with a value of $300 or more for a profit, pursuant to section 18–4–410(6), 8B C.R.S. (1986), and one count of possession of a schedule II controlled substance, pursuant to section 18–18–105, 8B C.R.S. (1986).

Defendants moved to suppress the evidence seized during the search and any evidence obtained during the undercover investigation that preceded the search. They also requested the court to order the prosecution to disclose the names of the informants, claiming that the informants were eye or earwitnesses who could provide exculpatory evidence for the defense. The defendants also claimed that disclosure was necessary because the informants' testimony was pertinent to their claim that the undercover agent entered their house "unlawfully without a warrant."

During a hearing on defendants' motions, the attorney for defendant Baltazar Villanueva claimed that the informants could provide exculpatory evidence as to Mr. Villanueva. The evidence had shown that Lucero had not seen Mr. Villanueva during her undercover investigation. Mr. Villanueva claimed that the informants would testify that at the time the informants were present at the house he was never present. Thus, such testimony was exculpatory because it would show that he was never involved in the fencing operation.

The trial court, relying on *People v. Bueno*, 646 P.2d 931 (Colo.1982), ordered the prosecution to disclose the identities of the informants. The court reasoned that although there was no showing that the informants participated in the crime with which Mr. Villanueva was charged, without the information provided by the informants "it's doubtful that the police would have ever been able to gain entrance into the Villanueva house." The court then ordered the district attorney to produce the informants "because it appears to the Court that the informants could in fact provide information material and information relevant and helpful to the accused male, Mr. Villanueva." At a subsequent hearing, Officer Covert testified that despite her best efforts, she could only identify the informants by their first names and did not know where they were. She also testified that at no time did the police have the full names of the informants. The trial court then ruled, stating:

It seems to me that these [informants] come under the heading at least of confidential informants whose names have to be disclosed to the defendants in the event there's any scintilla of evidence to support the possibility that they could

provide any exculpatory evidence for either defendant in this case.

. . . .

... I can't find that there's no possibility that the confidential informants, from the police we are dealing with, would not have provided exculpatory evidence as it relates to either one of the defendants in this case....

Because the prosecution failed to disclose the informants' names, the trial court ordered that all of the evidence obtained pursuant to the undercover investigation and the search warrant be suppressed.

The People contend that the trial court's order of disclosure was not supported by the law or the evidence and, even if disclosure was appropriate, suppression of all of the evidence was an excessive sanction. More specifically, the People argue that, because the informants were not present during the transactions which form the basis for the charges, they were not necessary to the defense as a source of exculpatory evidence.

We conclude that the trial court abused its discretion by ordering disclosure of the informants' identities. Because we believe disclosure is not appropriate in this case, we need not address the question whether a different sanction was a more appropriate remedy.

## II.

 The government's qualified privilege to choose not to disclose the identity of a confidential informant has been the subject of numerous cases. *See generally Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *People v. District Court*, 767 P.2d 1208 (Colo.1989); *People v. Vigil*, 729 P.2d 360 (Colo.1986); *People v. Roy*, 723 P.2d 1345 (Colo.1986); *People v. McLean*, 661 P.2d 1157 (Colo. 1983); *People v. Bueno*, 646 P.2d 931 (Colo. 1982). Although a defendant generally has no constitutional right to disclosure of a confidential informant, *McCray v. Illinois*, 386 U.S. 300, 312–14, 87 S.Ct. 1056, 1063–

64, 18 L.Ed.2d 62 (1967); *Vigil*, 729 P.2d at 364, considerations of fundamental fairness sometimes require that the informant's identity be revealed, *Roviaro*, 353 U.S. at 60, 77 S.Ct. at 627; *People v. District Court*, 767 P.2d at 1213. "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 627–28. The decision whether to require disclosure is within the trial court's discretion. *People v. District Court*, 767 P.2d at 1214. If, however, there is no evidence to support the trial court's ruling, a reviewing court may reverse the ruling. *Id.* at 1214.

The informer privilege generally arises in two situations. The first is when a defendant seeks to suppress evidence by attacking an affidavit which is the basis for a search warrant or arrest warrant. In such a case, the defendant bears the initial burden of "establish[ing] a reasonable basis in fact to believe that an informer does not exist or, if he does, he did not relate to the police the information upon which the police purportedly relied as probable cause for an arrest or search." *Bueno*, 646 P.2d at 936 (citations omitted); *see also People v. Garcia*, 752 P.2d 570, 578–79 (Colo.1988).

 The second is when a defendant claims that the informer is an essential witness on the issue of guilt or innocence. Again, the right to disclosure is not automatic; the accused must at least make some initial affirmative showing of his need for disclosure. *See Bueno*, 646 P.2d at 936. The prerequisite for an order of disclosure in this situation is a showing of a reasonable basis in fact to believe that the informant is a likely source of relevant and helpful evidence to the accused. *E.g., People v. District Court*, 767 P.2d at 1214; *Bueno*, 646 P.2d at 936. In addition, an order of disclosure must be supported by the record and cannot rest upon speculation or conjecture. *Vigil*, 729 P.2d at 364–65.

■ After a defendant has met his initial burden for attacking an affidavit or for a claim that the informer is an essential witness on the issue of guilt or innocence, a court must decide whether the privilege should apply. To determine whether the privilege applies, a court must balance the public's interest in protecting the flow of information to law enforcement authorities about criminal activity with the defendant's need to obtain evidence for the preparation of a defense. *Vigil*, 729 P.2d at 364 (citing *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628–29). "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628–29.

The factors to be considered in the balancing process mandated by *Roviaro* include: (1) whether the informant was an eyewitness to the crime; (2) whether the informant is available or, in the exercise of reasonable diligence, could be made available as a witness; (3) whether other witnesses are in a position to testify; (4) whether the informant's testimony is likely to vary significantly from the testimony of other available witnesses; (5) whether the defendant can find the identity of the informant on his own; and (6) whether the informant was deeply or peripherally involved in the criminal transaction. *See, e.g., People v. District Court*, 767 P.2d at 1214; *McLean*, 661 P.2d at 1159.

### III.

■ Within the framework of these principles, we turn to the facts of this case. Defendants, here, do not argue that the search warrant is defective because the informants do not exist or did not relate to the police the information upon which probable cause was based.

Instead, defendants claim that the informants are essential witnesses on the issue of guilt or innocence. Therefore, defendants must meet the initial burden of demonstrating a reasonable factual basis to believe that the informant is a likely source of relevant and helpful evidence. Because defendants presented no evidence in support of their request for disclosure, whether they have met their initial burden depends upon the facts set forth in the testimony at the motions hearings and in the affidavit for the search warrant.

The affidavit reflects that Cassandra told Lucero that the "business" had been operating approximately six years. Neither the testimony nor the affidavit states that Mr. Villanueva was present during the February 5 or February 10 undercover investigation. Based on the trial court's stated reliance on *People v. Bueno*, 646 P.2d 931 (Colo.1982), we must assume that the trial court accepted Mr. Villanueva's argument that the informants might, at some time, have been in the house at 1266 Elmwood Lane and had never seen Mr. Villanueva there, and this was sufficient to meet defendants' initial burden of disclosure set forth in *Bueno*.

Assuming, as did the trial court, that the defendants met their initial burden for disclosure, we now turn to the factors to be considered in balancing the defendants' need to obtain evidence and the public's interest in protecting the flow of information to the police.

First, no evidence was presented to indicate that the informants were eye or ear-witnesses to the crimes charged. As previously noted, the trial court found that there was no evidence to support a conclusion that the informants participated in the crime with which the defendants were charged. Based on the trial court's findings which are not disputed by the defendants, neither informant was present during the undercover purchases made by police on February 5, 1987 and February 10, 1987, which are the bases for the charges against defendants in this case. "When all the evidence discloses that the informant was an informant and nothing more, the prose-

cution should not, as a general rule, be required to reveal his identity." *Bueno,* 646 P.2d at 937 (quoting *People v. Langford,* 191 Colo. 87, 90, 550 P.2d 329, 331 (1976)).

Second, the police were unable to locate the informants so that they could be made available as witnesses. The record reflects that during one police contact with an informant, one of the officers had possession of an informant's driver's license in order to ascertain whether there was an outstanding warrant for him. The officer, however, did not keep a record of the informant's identity. Although the trial court stated that the police procedures could have been "a little tighter," it found that "there was no bad faith on the part of the police officers acting in this case."

We are satisfied from the evidence and from the trial court's finding that the police did not act in bad faith and that they exercised reasonable diligence in attempting to ascertain the identities of these informants.

Third, there is nothing in the record, other than speculation on the part of defense counsel, to indicate that the informants were ever in the house on Elmwood Lane. Fourth, there was no evidence that the informants were deeply involved in the criminal transaction.

Finally, based upon the trial court's use of an incorrect standard for disclosure, namely, that there need only be a "scintilla of evidence to support the possibility that [the informants] could provide any exculpatory evidence," we conclude that the trial court abused its discretion by ordering disclosure of the identities of the confidential informants.

The order suppressing evidence is reversed and this case is remanded to the district court for further proceedings consistent with the views stated herein.

ERICKSON, J., concurs in the result.

ERICKSON, Justice, concurring in the result:

I would reverse the suppression order because the identities of the informants have no bearing on the issue of guilt or innocence. In *People v. Bueno,* 646 P.2d 931 (Colo.1982), we recognized that each case must be decided on its own facts and said:

[T]he necessary foundation for the court's exercise of discretion in ordering disclosure should be a showing of a reasonable basis in fact to believe the informant is a likely source of relevant and helpful evidence to the accused. *See, e.g., People v. Langford,* 191 Colo. 87, 550 P.2d 329 (1976); *People v. Marquez,* 190 Colo. 255, 546 P.2d 482 (1976). Generally, a showing by the accused that the informant witnessed or participated in the crime will meet this threshold foundation and will provide an adequate basis for a discretionary order of disclosure. *See People v. Duran,* 188 Colo. 420, 535 P.2d 505 (1975); *Whaley v. People,* 171 Colo. 287, 466 P.2d 927 (1970).... In every case, however an order of disclosure must be supported by the record and may not rest upon speculation or conjecture. *People v. Langford,* 191 Colo. 87, 550 P.2d 329 (1976).

*Bueno,* 646 P.2d at 936 (footnote omitted).

The defendant in this case failed to establish a foundation under *Bueno* for disclosure. Here, apart from describing the manner in which allegedly stolen merchandise was being stored and sold, the informants did nothing more than provide a code word for entry into the residence. None of the information had any relationship to the validity of the search warrant or the investigation by Officer Lucero that resulted in the charges that stolen clothes from Lerner's were being sold at 1266 Elmwood Lane. In my view, the informant issue in this case is a red herring that does not require a detailed analysis under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny, and did not justify the trial court's suppression of the fruits of a legitimate investigation.

When all the evidence discloses that the informant was an informant and nothing

more, the prosecution should not, as a general rule, be required to reveal his identity. *People v. Langford,* 191 Colo. at 90, 550 P.2d at 331. *Accord People v. Bueno,* 646 P.2d at 937.

*People v. Vigil,* 729 P.2d 360, 364 (Colo. 1986).

Accordingly, I concur in the reversal of the suppression order.