The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Apolonio Paul FLOREZ,
Defendant-Appellee.

No. 83SA371.

Supreme Court of Colorado,
En Banc.

April 2, 1984.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., Jeffrey A. Herzfeld, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Linda Hotes, Deputy State Public Defender, Brighton, for defendant-appellee.

ERICKSON, Chief Justice.

The prosecution has taken this interlocutory appeal from an order declaring that the arrest of the defendant, Apolonio Paul Florez, was unlawful and from an order suppressing a statement made by the defendant. C.A.R. 4.1. We reverse the ruling of the district court.

## I.

The record reveals the following pertinent facts. On March 1, 1983, Commerce City Police Officer Larry Woog was assigned to investigate the alleged theft of a color television set from a motel room at the Clear View Motel in Commerce City, Adams County, Colorado. The owner of the motel told Officer Woog that on February 28, 1983, the defendant, who registered under the name of "Paul Perea," and two women had checked into his motel.[1] On the morning of March 1, 1983, the defendant advised the owner of the motel that he and the two women would be "staying another day." The owner went to the defendant's room thirty minutes later and found that the defendant and the two women had left the motel. The color television set in

---

1. Officer Woog testified that the man, later identified as the defendant, and the two women had stayed previously at the Clear View Motel, and had each time specifically requested the motel room from which the television set was removed because "number 4 [the motel room] had a colored television set in it."

the room had been at that time unbolted from its stand and removed.

Officer Woog testified that he examined the motel guest registration book and confirmed certain information given him by the owner pertaining to the make and license plate number of the defendant's vehicle. The guest registration book reflected that the defendant listed his permanent address as 7720 Oneida Street.

In an attempt to locate the defendant, Officer Woog went to 7720 Oneida Street, but found the apartment building vacant. He contacted the landlord of the complex who said that "Perea" had, at one time, lived at that address, but had moved out. The landlord told Officer Woog that "Perea" had worked at "Rick's Used Furniture Store" in Commerce City.

At "Rick's Used Furniture Store" Officer Woog learned that a man matching the description given him by the owner of the motel had lived and worked at the store. He was told that the defendant had vacated the premises, but had left some personal effects. Officer Woog examined the defendant's papers and noticed that many of the letters were addressed to a "Paul Florez." He also found the telephone number of the mother of Florez, who indicated to the officer in a subsequent telephone conversation that her son was known as "Paul Perea." Upon further investigation, Officer Woog determined that there were two outstanding Westminster arrest warrants for "Paul Florez" for aggravated motor vehicle theft and escape from a community corrections program.[2]

Officer Woog later learned that one of the women who was with the defendant on the day of the theft of the television set had stayed at a motel located in Englewood. On March 7, 1983, Officer Woog and Officer Meiklejohn, who was also a Commerce City police officer, were proceeding to the motel to question the woman when Officer Woog spotted what he believed to be the stolen vehicle. Florez was driving, and there were two females in the truck with him. The officer testified that he informed the Englewood Police Department that he and Officer Meiklejohn intended to stop the defendant at the underpass near the Cinderella City Shopping Center in Englewood, and requested local police assistance.

The record indicates that, at approximately 1:40 p.m., Officers Woog and Meiklejohn stopped the defendant's vehicle, ordered its occupants out of the vehicle, and detained them at gun point for four to six minutes until Detective Wood, an Englewood police officer, arrived. Officer Woog testified that when Detective Wood arrived, he told him that there were two outstanding arrest warrants for the defendant. Detective Wood confirmed the existence of the outstanding warrants, filled out a custody report which was later processed through the Englewood Police Department, and impounded the defendant's vehicle. The record reveals that Officer Woog then informed Detective Wood that he was investigating the defendant for a felony theft in Commerce City, and requested that Detective Wood release the defendant to his custody for interrogation. Detective Wood then turned physical custody of the defendant over to Officers Woog and Meiklejohn.

Officers Woog and Meiklejohn placed the defendant and the two women in their police vehicle and returned to the Commerce City Police Department. The defendant made no inculpatory statements to the officers either at the time of his arrest or during the drive back to the Commerce City Police Department. At the Commerce City Police Department, Officer Woog first interviewed the defendant's two women companions. Both women said that the defendant had, in fact, removed the television set from the Clear View Motel on March 1, 1983. At approximately 3:25 p.m. that same afternoon, Officer Woog read a

2. The record reveals that Officer Woog spoke to a detective at the Westminster Police Department and obtained a description of the stolen Westminster vehicle which matched the description of the vehicle driven by the defendant, and that provided by the defendant when he registered at the motel.

written advisement of rights form to the defendant. The defendant signed a written waiver of his rights, confessed to the crime, and later signed a written confession.

On March 10, 1983, the prosecution filed a felony information in Adams County District Court, charging the defendant with felony theft.[3] On May 19, 1983, defense counsel filed a motion to suppress the defendant's written confession to the crime.

At the suppression hearing on July 22, 1983, Officer Woog testified on direct examination to the circumstances surrounding the defendant's arrest and confession. On cross-examination, defense counsel examined the officer with respect to the actual arrest procedures, focusing upon the particular acts of each officer in effecting the arrest. Defense counsel contended that the defendant's statement should be suppressed as the fruit of an unlawful arrest because Officer Woog had exceeded his statutory authority in arresting the defendant. *See* section 16–3–106, C.R.S. 1973 (1978 Repl.Vol. 8). At the close of the suppression hearing, the prosecution made a motion to reopen the hearing at a later date on the ground that defense counsel's

motion to suppress had failed to adequately apprise the district attorney of the basis of the challenge to the defendant's arrest. The trial court granted the prosecution's motion, and the suppression hearing was continued to August 4, 1983.

At the suppression hearing on August 4, 1983, the prosecution presented the testimony of Officer Woog and Detective Wood who testified to the circumstances of the defendant's arrest. The trial court granted defense counsel's motion to suppress, and found that "Officer Woog did not have lawful authority to make the arrest." [4]

## II.

The prosecution asserts that the arrest of the defendant by Officer Woog was statutorily authorized because he properly enlisted the aid of the local Englewood police. The prosecution also contends that Officer Woog had probable cause to arrest the defendant. We agree.

## A.

We must determine first whether Officer Woog exceeded his statutory authority in

---

3. Section 18–4–401, C.R.S. 1973 (1978 Repl.Vol. 8 & 1983 Cum.Supp.).

4. The trial court stated:

"[T]he court has to make the determination *if there is no valid arrest and whether or not there was an unreasonable violation of the defendant's constitutional rights.*

"The evidence in this particular case is somewhat different than that of the Hamilton case [*People v. Hamilton*, 666 P.2d 152 (Colo. 1983)] and what I would indicate, *the most unique portion or difference in the case is the fact that once Mr. Florez was arrested by the Commerce City Police Department that he was probably transported to Commerce City.* He was taken out of the jurisdiction of Arapahoe County and taken to Adams County where he was interrogated by [a] Commerce City officer and statements were obtained. [The] court is making a determination *as to a Fifth Amendment right under the U.S. Constitution* Article 2, Section 18.

. . . .

"[The] *court is going to read Rule 5(a)(1) Felony Proceedings.*

"If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken

without unnecessary delay before the *nearest available* county or district judge.

. . . .

"Thereafter a felony complaint et cetera. At least my interpretation of Rule 5 together with the Constitution of both the State of Colorado and the U.S. Constitution is that the defendant has the right under the procedure as follows to remain in the jurisdiction in which the arrest takes place *at least for a portion of time to be advised of his rights by the nearest available county judge.*

"In this case he was removed from that jurisdiction without lawful authority and taken from Arapahoe County to Adams County where statements would be obtained from him.

"*I do feel in that regard that is a violation of a constitutionally protected right and a right which is more particularly delineated in the Rules of Criminal Procedure.*

"*In this case there is a violation of that and the Court will suppress the statements made by Mr. Florez before* [sic] *he was taken to Commerce City.*"

(Emphasis supplied.)

arresting the defendant.[5] The Colorado General Assembly has dealt specifically with the arrest authority of peace officers in section 16–3–102, C.R.S. 1973 (1978 Repl. Vol. 8) which provides:

"(1) A peace officer may arrest a person when:

(a) He has a warrant commanding that such person be arrested; or

(b) Any crime has been or is being committed by such person in his presence; or

(c) He has probable cause to believe that an offense was committed and has probable cause to believe that the offense was committed by the person to be arrested."

The statute does not impose territorial limitations on the arrest authority of officers. Section 16–3–106, C.R.S. 1973 (1978 Repl. Vol. 8), contains, however, the following territorial restraints upon the arrest authority of police officers:

"When any peace officer is in fresh pursuit of any alleged offender, having a warrant for his arrest· or having knowledge that such warrant has been issued, or, in the absence of an arrest warrant, when the offense was committed in the officer's presence or the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense, and the alleged offender crosses a boundary line marking the territorial limit of his authority, such peace officer may pursue him beyond such boundary line and make the arrest, issue a summons and complaint, or issue a notice of penalty assessment."

■  This court has consistently recognized the requirement that police officers acting outside their territorial jurisdictions must obtain the aid of local officers who have authority to make arrests in the "foreign" jurisdiction, absent fresh pursuit exigencies. *People v. Hamilton,* 666 P.2d 152 (Colo.1983); *People v. Wolf,* 635 P.2d 213 (Colo.1981).

■  In *People v. Schultz,* 200 Colo. 47, 611 P.2d 977 (1980), we ruled that it is immaterial who executes the arrest warrant provided that individuals with lawful authority to make an arrest are actually *present at the scene of the arrest* and *participate in the arrest process.* In that case, officers of the Larimer County Sheriff's office executed an arrest warrant on the defendant at his residence in Greeley,

---

5.  It appears from the record that the trial court interpreted our decision in *People v. Hamilton,* 666 P.2d 152 (Colo.1983), as requiring a two-step analysis in extra-territorial arrest cases:

"I am not sure what is meant by the [Colorado] Supreme Court, but at least it is my view that the Supreme Court is requiring now a two-fold test, that is, [1] authorization for the arrest and [2] assuming there is no authorization there has to be a determination that there is some violation *other than an unlawful arrest—some other violation of the Defendant's constitutional rights."* (Emphasis supplied.)

Apparently, the trial court found, in the first place, that the Commerce City officers had exceeded their statutory authority in effecting the arrest of the defendant. In an attempt to determine whether there was, in addition to an unauthorized arrest, some constitutional violation *"other than an unlawful arrest—some other violation* of the [d]efendant's constitutional rights," the trial court raised *sua sponte* the question of whether the officers' failure to comply precisely with Crim.P. 5(a) constituted "a violation of a constitutionally protected right." The trial court answered his question in the affirmative, and "suppress[ed] the statement made by Mr. Florez before [sic] he was taken to Commerce City." (Emphasis supplied.)

In our view, the trial court incorrectly interpreted our decision in *People v. Hamilton, supra.* In that case, we held that, in determining whether an arrest is unlawful because an officer has exceeded his statutory authority in effecting an arrest, the court must first assess whether, in fact, the officer has acted outside his territorial jurisdiction. If the court finds that the officer has exceeded his *statutory* arrest authority, the court must then determine whether the unauthorized arrest is unconstitutional and therefore warrants the suppression of the illegally seized evidence. Violations by peace officers of statutory limitations upon their arrest authority will, however, continue to be carefully scrutinized.

The trial court found the violation of Crim.P. 5(a) to be concomitant to an unauthorized arrest and an infringement of the defendant's Fifth Amendment rights. We reject the trial court's reading of our analysis in *Hamilton, supra,* and the interpretation of Crim.P. 5.

Colorado. Prior to making the arrest, the officers requested and received local assistance from officers of the Weld County Sheriff's office and the Greeley Police Department. We held that the arrest was lawful, and said:

"Since officers with authority to arrest in Weld County were present during the defendant's arrest, we can perceive no reason to hold the arrest invalid.... To hold the arrest warrant invalid simply because the Larimer County Sheriff's officers did not formally request that the Weld County Sheriff's officers or Greeley police perform the steps required to effect the defendant's arrest would be to exalt form over substance."

200 Colo. at 49, 611 P.2d at 979 (citation omitted).

In this case, the Commerce City police officers "spotted" the "defendant" and the "stolen vehicle" in Englewood, and immediately radioed the Englewood Police Department and requested local assistance to effect the arrest. Officers Woog and Meiklejohn stopped the alleged stolen vehicle, and detained its occupants until the Englewood police arrived. There is nothing in the record to support the view that the Commerce City officers did anything beyond what was dictated by the circumstances attendant to the initial stop of the stolen vehicle and the detention of its occupants.[6]

Upon the arrival of Englewood Detective Wood, Officer Woog told him that there were two outstanding arrest warrants for the defendant which had come to his attention during his investigation of the defendant for felony theft in Commerce City. Detective Wood confirmed by police radio the information given to him by Officer Woog, and later filled out a custody report[7] which

was processed through the police department in Englewood.[8] Detective Wood then impounded the stolen vehicle.

The Commerce City officers asked Detective Wood to relinquish physical custody of the defendant to them so that they could return him to the Commerce City Police Department for interrogation with respect to the felony theft of the television set. Detective Wood complied with the request, and the defendant was taken immediately to the Commerce City Police Department. At 3:25 p.m. that same day, the defendant signed a confession.

■ In our view, the trial court incorrectly concluded that Officer Woog exceeded his statutory authority in arresting the defendant. In this case, the Englewood officer's presence at the scene of the arrest and his participation in the arrest process constitutes sufficient "aid" within the meaning of the requirement that officers acting outside their territorial jurisdictions obtain the "aid" of local officers authorized to make arrests in the "foreign" jurisdiction, absent fresh pursuit exigencies. *See People v. Hamilton, supra.* We hold, accordingly, that the officer's arrest of the defendant was statutorily authorized.

### B.

Having concluded that the officer did not exceed his statutory authority in effecting the arrest of the defendant, we must next determine whether the arrest violated constitutional restraints on unreasonable searches and seizures. *See People v. Hamilton, supra.*

The trial court found that the defendant's arrest was not supported by probable cause.[9] We disagree and rule that the

---

6. The prosecution concedes that Officers Woog and Meiklejohn were not in fresh pursuit of the defendant within the meaning of section 16-3-106, C.R.S. 1973 (1978 Repl.Vol. 8).

7. The record is unclear with respect to who filled out certain sections of the custody report. Detective Wood testified: "I signed it. I completed the report. There is other writing on it that is not mine." The record does not indicate

the identity of the other party or parties who filled out the remaining parts of the report.

8. Detective Wood testified that he did not "recall giving them [the Commerce City officers] a piece of paper [custody report]. He stated further that "[i]t [custody report] was turned in to our records section for processing."

9. Although the prosecution argued at the August 4, 1983, suppression hearing that there was suf-

defendant's arrest was supported by probable cause and was therefore lawful.

■■■ Whether probable cause to arrest exists depends upon objective facts. *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974). The court must determine whether the facts available to a reasonably cautious officer at the moment of the arrest warranted the belief that an offense has been or is being committed by the person arrested. *People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971). In determining whether probable cause exists, the totality of the evidence known to the arresting officer, including information obtained from fellow officers, and such other circumstances as support a conclusion that a crime has been committed, may be considered. *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983). Probable cause to arrest must be determined on a case-by-case basis after reviewing the particular facts and circumstances which existed at the time of the arrest. *People v. Lucero*, 174 Colo. 278, 483 P.2d 968 (1971).

Here, Officer Woog received descriptions from the owner of the Clear View Motel of the defendant, the two women who had accompanied him, and the vehicle that he was driving on March 1, 1983.[10] The officer later confirmed that the vehicle driven by the defendant was the same vehicle stolen from the Westminster automobile dealership. Subsequent investigation revealed that "Paul Perea," the individual

who allegedly removed the television set from the Clear View Motel, was an alias for the defendant, Paul Florez, the subject of the outstanding arrest warrants. At the July 22, 1983, suppression hearing, Officer Woog described the events immediately preceding his stop of the defendant:

> "[A]s we were driving around out there, I *spotted* the vehicle. His pickup truck was coming north on Santa Fe and I was going south, *the same pickup truck that was supposedly stolen out of Westminster. Mr. Florez was behind the wheel driving, and there was also two females in the truck with him.*"

(Emphasis supplied.)

■■■ At the moment of arrest, Officer Woog had probable cause to believe that the driver of the stolen vehicle was, in fact, the subject of the outstanding warrants for aggravated motor vehicle theft and escape from a community corrections program, and was the person who participated in the theft of the television set. Thus, the arrest was supported by probable cause.[11]

### III.

The prosecution contends that the trial court erred in finding that the Commerce City and Englewood police officers' failure to take the defendant before the *"nearest available county or district judge"* for a formal advisement of his constitutional rights violated Crim.P. 5(a)(1) and the defendant's right against self-incrimination

---

ficient participation by the Englewood police officer in the arrest of the defendant, the trial court found that the only ground upon which the arrest was authorized was that "Officer Woog may have had [authority] in this particular case to make an arrest if in fact a crime was being *committed in his presence.*" (Emphasis supplied.) *See* section 16–3–201, C.R.S.1973 (1978 Repl.Vol. 8). The trial court, however, rejected this basis:

> "If he [Officer Woog] had sufficient information to determine if the vehicle in question was stolen and that the length of time between the theft of the vehicle and the driving of the vehicle by Mr. Florez was sufficiently short as to raise the presumption of recent possession of the stolen property.
>
> "[The] court does not have enough information to make a determination that the vehicle

was stolen and that no information when in fact the vehicle was stolen to establish any probable cause to believe that the vehicle was the vehicle in question."

10. The owner described the defendant as being "a short Spanish individual; curly haired; glasses; heavy build." He described the defendant's vehicle as a 1978 silver Chevrolet truck with the license plate number 0187PH.

11. The record reveals that Officer Woog had probable cause to arrest the defendant on the basis of his investigation of the felony theft in Commerce City. In addition, the existence of the outstanding arrest warrants provided a prima facie showing of probable cause. *People v. Gouker*, 665 P.2d 113 (Colo.1983).

under the federal and state constitutions. We agree.

Crim.P. 5(a)(1) provides:

"If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the *nearest* available county or district judge. Thereafter, a felony complaint, information, or indictment shall be filed, if it has not already been filed, without unnecessary delay in the proper court and a copy thereof given to the defendant."

(Emphasis supplied.) Crim.P. 5(a)(2) requires a judge to inform a defendant of his privilege against self-incrimination and his right to the appointment of an attorney at state expense if he lacks funds to retain an attorney.

The requirement of Crim.P. 5 that an arrested person be taken without unnecessary delay before the nearest available county or district judge is not a constitutional right, but is a right conferred by rule. *Butterwood v. United States*, 365 F.2d 380 (10th Cir.1966) (stating that Fed. R.Crim.P. 5(a), promulgated in pursuance of the federal courts' supervising power over federal prosecutions, is not a Constitutional prohibition). We have consistently refused to adopt a *per se* rule of exclusion for Crim.P. 5 violations; instead, we have required the defendant to show that prejudice resulted from the unnecessary delay in taking the accused before the judge. *People v. Raymer*, 662 P.2d 1066 (Colo.1983); *People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974). No prejudice was demonstrated here. We do not read Crim.P. 5(a)(1) to confer upon an accused the right to remain in the jurisdiction in which the arrest takes place for a formal advisement of his constitutional rights. *Cf. People v. Robinson*, 192 Colo. 48, 556 P.2d 466 (1976).

The record does not support the trial court's conclusions of law, and therefore the court committed error in suppressing the defendant's statement. *People v. Johnson*, 653 P.2d 737 (Colo.1982). Accordingly, we reverse the ruling.