**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Anna Irene VIGIL, a/k/a Anna Irene Martinez, Defendant-Appellee.**

**No. 84SA459.**

Supreme Court of Colorado, En Banc.

Dec. 8, 1986.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for plaintiff-appellant.

David J. Mintz, Emerson B. Semple, Denver, for defendant-appellee.

LOHR, Justice.

The People appeal a judgment of the Adams County District Court dismissing an information charging the defendant, Anna Irene Martinez (Martinez),[1] with possession of a schedule I controlled substance and distribution of a schedule I controlled substance. §§ 12–22–309, 5 C.R.S. (1985), and 18–18–105, 8B C.R.S. (1986). On a motion by the defendant, the district court ordered the People to produce a confidential informant at an *in camera* hearing. When the prosecution refused to comply with this order, the district court dismissed the case. We hold that the district court acted within its discretion in ordering the production of the confidential informant. Therefore, we affirm the judgment of dismissal.

## I.

The district court required the production of the confidential informant in order to obtain information necessary to resolve motions to suppress evidence. Defendant Martinez's motion to suppress was predicated on the assertion that the Denver officers who arrested her had acted willfully and illegally in going outside Denver to accomplish the arrest in Adams County. The prosecution argued that the officers went to Adams County in response to a tip from a confidential informant and under circumstances calling for prompt action. Martinez questioned the existence of the informant. A summary of the relevant

testimony is necessary to an understanding of the issues concerning the propriety of the order for production of the informant.

Officer Dennis Cribari of the Denver Police Department testified at the hearing on the motion for disclosure of confidential informant and described the events leading up to the arrest of Martinez. Cribari stated that he and Officer Larry Subia were in their unmarked police car in downtown Denver at about 3:00 p.m. on October 28, 1983, when Officer Subia received a message over his pager.[2] The caller said that Rafael Kenneth Chavez (Chavez) was at the Mint Lounge at 8400 Washington Street. The caller did not identify himself, but Officer Subia recognized the voice as that of "an informant of his."

The officers were aware that there was an outstanding federal warrant for Chavez, and even though they knew that the Mint Lounge was located in the City of Thornton, in Adams County, they decided to check out the tip. They elected not to attempt to contact Thornton police authorities "and send them en route to the Mint Lounge on a hunch that [Chavez] may be there through the informant's information." While en route to the Mint Lounge, Officer Cribari contacted the National Crime Information Center in order to confirm a license plate number that he believed belonged to a black Pontiac Grand Prix owned by Martinez. Based on prior information, Officer Cribari knew that Chavez was a close associate of Martinez and may have been using one of her cars.[3]

Officer Cribari specifically denied that the officers had kept Martinez under surveillance at any time on October 28. Martinez, however, produced several witnesses

1. The defendant is described as Anna Irene Vigil, a/k/a Anna Irene Martinez, in the direct criminal information. The record indicates that she has married a man named Martinez and now uses that surname.

2. The pager worn by Officer Subia is known as a radio contact pager. If someone desires to contact a person with this type of pager, the caller will dial a phone number assigned to the pager. After hearing a beep, the caller may begin talking but can speak for only approxi-

mately ten to fifteen seconds before a second beep signals termination of the call. The person with the pager can hear what the caller is saying but cannot talk to the caller.

3. Martinez also owned a light blue station wagon. Officer Cribari testified that he did not contact the National Crime Information Center about the station wagon because he was sure of its license plate number.

who testified to the contrary, stating that the officers had parked across from Martinez's house in northwest Denver near mid-day and had followed her vehicle when she left the house. This called into question Cribari's testimony concerning the circumstances that resulted in the officers' trip to the Mint Lounge.

Upon arriving at the Mint Lounge, Cribari testified, the officers drove slowly through the parking lot looking for either Chavez or one of the two vehicles they suspected he might be driving. The officers spotted Chavez and Martinez standing behind the black Grand Prix, conversing. Martinez handed Chavez what appeared to be a coin wrapper,[4] whereupon the officers got out of their car. When Chavez and Martinez saw the officers, Chavez fled. Officer Cribari pursued Chavez and a struggle ensued, during which Chavez dropped the coin wrapper. With Officer Subia's assistance, Officer Cribari was able to handcuff Chavez. Subia then showed Cribari a green balloon that Subia said Chavez had dropped sometime during the struggle. While Officer Cribari detained Chavez, Officer Subia retrieved the coin wrapper Chavez had dropped and found that it contained several balloons. The officers then handcuffed Martinez, and Officer Cribari watched the suspects while Officer Subia used his police radio to summon Thornton police. A Thornton police car arrived shortly thereafter. Officers Subia and Cribari transported Chavez to the Thornton police station, and the Thornton officers took Martinez to that same location. There, the suspects were searched and booked. Quantities of heroin were found in Martinez's possession.

The substance in the balloons also proved to be heroin, and both Chavez and Martinez were subsequently charged with possession and distribution of heroin. The defendants filed motions to suppress the evidence obtained as a result of their arrests, contending principally that the arrests were illegal because Officers Subia and Cribari were acting outside the physical limits of their jurisdiction in violation of section 16–3–106, 8A C.R.S. (1986). At the same time, the defendants filed motions for disclosure of the confidential informant. It was the defendants' position that the question of whether the confidential informant actually existed, what the informant may have said to the officers, and when the informant may have imparted the information all bore directly on whether Officers Subia and Cribari had complied with the statute and whether suppression of evidence should be ordered as a result of any noncompliance. The defendants maintained that those questions needed to be resolved so that a fair determination of their motions to suppress could take place.

Following testimony by witnesses and arguments by counsel, the trial court granted the defendants' motions for disclosure on the bases that disclosure of the informant was essential to resolve issues raised concerning the officers' credibility and that disclosure was absolutely necessary to protect the defendants' rights to due process of law and to confrontation. The court ordered that the prosecution produce the informant at an *in camera* hearing. Counsel for the defendants would be allowed to be present, but the defendants were neither to attend nor to be made privy to any information developed at the hearing. The prosecution refused to disclose the identity of the confidential informant, asserting a concern for the informant's safety, and the court dismissed the case against Chavez and Martinez. The prosecution appealed the dismissal to this court. During the pendency of this appeal, defendant Chavez died. Therefore, the case against Chavez became moot, and only the validity of the order of dismissal as to defendant Martinez remains to be resolved.

The People contend in their briefs on appeal, first, that the disclosure order was improper because even if the officers acted illegally in arresting Martinez outside their territorial jurisdiction, the illegality

---

**4.** Officer Cribari testified that based on his years of experience in narcotics enforcement, he knew that a coin wrapper is an item commonly used for transporting narcotics.

stemmed from a statutory violation and not a constitutional one. The exclusionary rule, they assert, can be invoked as a remedy for an infringement of constitutional rights, but "may not be appropriate" for a statutory violation. Martinez's interest in obtaining information about a possible statutory violation, therefore, "is not as crucial as in the case where constitutional rights are at stake." Second, the People urge that the defendant's interest in learning the identity of the informant is attenuated because any information the informant might possess would relate only to the circumstances giving rise to the officers' presence at the Mint Lounge and would be "substantially unrelated to the defendants' guilt or innocence." Finally, the People assert that no adequate factual basis has been established "to suggest that the informant did not exist or that he did not provide to the police the statements attributed to him by Detective Cribari." We first review the standards governing disclosure of informants and then consider the People's three interrelated arguments for reversal.

## II.

### A.

The law has long recognized the government's qualified privilege to choose not to disclose the identity of a person who has provided law enforcement officers with information concerning violations of law. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *People v. Bueno*, 646 P.2d 931, 935 (Colo. 1982). The privilege exists in order to encourage citizens to perform their obligation to advise law enforcement officers of information concerning the commission of crimes. *Roviaro v. United States*, 353 U.S. at 59, 77 S.Ct. at 627; *People v. McLean*, 661 P.2d 1157, 1159 (Colo.1983).

 The privilege, however, is not absolute. Although a defendant generally has no constitutional right to the disclosure of a confidential informant, *McCray v. Illinois*, 386 U.S. 300, 312–14, 87 S.Ct. 1056, 1063–1064, 18 L.Ed.2d 62 (1967), considera-

tions of fundamental fairness sometimes require that the identity of such an informant be revealed. *Roviaro v. United States*, 353 U.S. at 60–61, 77 S.Ct. at 627–628; *People v. Dailey*, 639 P.2d 1068, 1077 (Colo.1982). Therefore, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure...." *Roviaro v. United States*, 353 U.S. at 60–61, 77 S.Ct. at 627–628 (footnote omitted). *Accord People v. Bueno*, 646 P.2d at 935. Dismissal of an action may be ordered in proper circumstances if the government declines to disclose in accordance with the court's order. *Roviaro v. United States*, 353 U.S. at 60–61, 77 S.Ct. at 627–628, *People v. Martinez*, 658 P.2d 260 (Colo.1983); *People v. Korte*, 198 Colo. 474, 602 P.2d 2 (1979).

 In determining whether the privilege should yield in a particular case, the court must balance the public's interest in protecting the flow of information to law enforcement authorities about criminal activity against the defendant's need to obtain evidence necessary for the preparation of a defense. *Roviaro v. United States*, 353 U.S. at 62, 77 S.Ct. at 628. *People v. Korte*, 198 Colo. at 475, 602 P.2d at 3. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States*, 353 U.S. at 62, 77 S.Ct. at 628. *Accord People v. Bueno*, 646 P.2d at 935.

 A defendant is not entitled to the disclosure of an informant based on the bare assertion that his defense requires it. Such a rule would defeat the very purpose of the balancing test. *McCray v. Illinois*, 386 U.S. at 306–11, 87 S.Ct. at 1060–1062; *People v. Marquez*, 190 Colo. 255, 259, 546 P.2d 482, 485 (1976). "In every case ... an order of disclosure must be supported by

the record and may not rest upon speculation or conjecture." *People v. Bueno*, 646 P.2d at 936. *Accord People v. Langford*, 191 Colo. 87, 90, 550 P.2d 329, 331 (1976). Therefore, disclosure of a confidential informant may be ordered only where the defendant has established a "reasonable basis in fact to believe the informant is a likely source of relevant and helpful evidence to the accused." *People v. Bueno*, 646 P.2d at 936.

■ We have also recognized that where the informant was not a witness to the crime charged, or was not in some way involved in the criminal episode, the defendant necessarily has more difficulty showing that disclosure of the informant would be relevant or helpful to the defense. *See People v. Del Alamo*, 624 P.2d 1304, 1307 (Colo.1981) (informant not a witness to matters as to which evidence was received; refusal to order disclosure proper). The possibility that disclosure of the informant will result in evidence relevant or helpful to the accused is simply more remote under such circumstances, and the balance tips more heavily in favor of protecting the public's interest in promoting the free flow of information relating to criminal activity from citizens to police. "When all the evidence discloses that the informant was an informant and nothing more, the prosecution should not, as a general rule, be required to reveal his identity." *People v. Langford*, 191 Colo. at 90, 550 P.2d at 331. *Accord People v. Bueno*, 646 P.2d at 937.

■ In reviewing the trial court's order to disclose the confidential informant, the court's findings of fact relevant to the issue of disclosure will not be disturbed unless they are clearly erroneous. *People v. Martinez*, 658 P.2d at 262. Finally, we must be mindful that the decision of whether to order disclosure is committed to the sound discretion of the trial court and that the court's exercise of that discretion is entitled to strong deference. *People v. McLean*, 661 P.2d at 1159; *People v. Dailey*, 639 P.2d at 1077. "This is based, of course, on the trial court's proximity to the presentation of the facts by witnesses, by exhibits, and by the parties at the preliminary hearing, the hearing on the motion for disclosure, and from statements of counsel." *People v. McLean*, 661 P.2d at 1159. If there is evidence in the record to support the order of the trial court compelling disclosure, the order must stand. *People v. Korte*, 198 Colo. at 476, 602 P.2d at 3.

## B.

Martinez sought disclosure of the informant principally to acquire information relevant to her motion to suppress evidence obtained as a result of her arrest. The thrust of Martinez's motion to suppress was that the officers acted in willful disobedience of section 16–3–106, 8A C.R.S. (1986), and that suppression is a proper remedy for that illegal action.

■ Section 16–3–106 provides:

When any peace officer is in fresh pursuit of any alleged offender, having a warrant for his arrest or having knowledge that such warrant has been issued, or, in the absence of an arrest warrant, when the offense was committed in the officer's presence or the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense, and the alleged offender crosses a boundary line marking the territorial limit of his authority, such peace officer may pursue him beyond such boundary line and make the arrest, issue a summons and complaint, or issue a notice of penalty assessment.

Implicit in this statute is the premise that peace officers may not go outside the territorial boundaries of their authority to arrest suspects except in the limited circumstances described. *People v. Wolf*, 635 P.2d 213 (Colo.1981). In enacting this section, "[t]he General Assembly ... intended to limit peace officers from exercising their arrest powers and their law enforcement efforts, to the territorial limits of their authority and to require that local peace officers be advised and participate in the extraterritorial law enforcement activities of other peace officers." *Id.* at 216. *Ac-*

cord *People v. Florez,* 680 P.2d 219, 223 (Colo.1984); *People v. Hamilton,* 666 P.2d 152, 156 (Colo.1983). Even when a police officer has a warrant for the arrest of a person, at least in the absence of special authorization in the warrant itself the officer may not go outside the territorial boundaries of his authority to accomplish the arrest unless the officer is in fresh pursuit of the alleged offender. *People v. Hamilton,* 666 P.2d at 155. When section 16–3–106 has been violated by a peace officer, evidence obtained as a result of the violation should be suppressed if the violation also infringes a constitutional right of the defendant, such as the right to be free from unreasonable searches and seizures. *People v. Wolf,* 635 P.2d at 217–18. Accord *People v. Hamilton,* 666 P.2d at 156.

The People suggest, however, that the exclusionary rule should be applicable only when evidence is obtained as the result of an infringement of constitutional rights and cannot be predicated simply on a violation of statutory limitations on the authority of peace officers, such as those limitations on extraterritorial authority of peace officers set forth in section 16–3–106. It is true that in *People v. Wolf* we did not impose exclusion of evidence as a remedy for police activities exceeding the scope of extraterritorial authority recognized in section 16–3–106. However, we expressly noted the possibility of such relief in appropriate circumstances, stating:

> In cases where the police act in willful disobedience of the law, the courts have not hesitated to use their supervisory power to exclude evidence.... This Court cannot sanction willful and recurrent violations of the law, and thus, future violations of the statutes governing peace officers' authority to arrest may trigger application of the exclusionary rule and require suppression of evidence obtained in the course of an extraterritorial arrest.

*Id.,* 635 P.2d at 217–18 (citations omitted). *Cf.* Colo. Const. art. VI, § 2 (supreme court shall have a general superintending control over lower courts).

Thereafter, in *People v. Hamilton,* we held that although the extraterritorial arrest at issue in that case was contrary to section 16–3–106, the evidence obtained as a consequence "may be suppressed ... only if the unauthorized arrest violated constitutional constraints on unreasonable searches and seizures." *Id.,* 666 P.2d at 156. Then, in *People v. Florez,* we interpreted *People v. Hamilton* to require a two step process: "If the court finds that the officer has exceeded his *statutory* arrest authority, the court must then determine whether the unauthorized arrest is unconstitutional and therefore warrants the suppression of the illegally seized evidence." *People v. Florez,* 680 P.2d at 223 n. 5 (emphasis in original). We went on immediately to suggest, however, that suppression for only a statutory violation is not foreclosed, stating, "violations by peace officers of statutory limitations upon their arrest authority will, however, continue to be carefully scrutinized." *Id.*

Moreover, if police officers exhibit a "knowing disregard of the territorial boundaries of their authority, coupled with ... failure to avail themselves of simple procedures readily available for legitimizing an extraterritorial arrest," i.e., seeking the assistance of local peace officers, their actions may fall "within the zone of constitutional unreasonableness under Article II, Section 7, of the Colorado Constitution." *People v. Wolf,* 635 P.2d at 219–20 (Quinn, J., dissenting); *see People v. Hamilton,* 666 P.2d at 156–57; *cf. People v. Lott,* 197 Colo. 78, 589 P.2d 945 (1979) (suppressing evidence for violation of section 16–3–106 without discussion of distinction between constitutional and statutory violations). We have emphasized, however, that violations of section 16–3–106 are not per se violations of constitutionally protected rights. *People v. Thiret,* 685 P.2d 193, 200 (Colo.1984) (Quinn, J., writing for unanimous court); *People v. Hamilton,* 666 P.2d at 156.

Salient principles that emerge from the foregoing decisions are that suppression is not foreclosed as a possible remedy for

willful violations by police officers of section 16-3-106 and that such statutory violations in any event will trigger suppression if they are so egregious as to violate the protections against unreasonable searches and seizures guaranteed by our state constitution. It is apparent from our cases that the facts with respect to the reasons for and nature of extraterritorial actions of police officers are highly important in determining whether suppression of evidence is required when police officers make arrests outside the boundaries of their jurisdictions. *See People v. Thiret,* 685 P.2d at 200; *People v. Florez,* 680 P.2d at 222-24; *People v. Hamilton,* 666 P.2d at 156-57; *People v. Wolf,* 635 P.2d at 217. We turn now to the facts developed in the record of the present case.

## C.

At the hearing on the motions for disclosure of confidential informant, Officer Cribari testified that although he was acquainted with Martinez from prior investigations, he and Officer Subia had not kept Martinez under surveillance at any time on October 28, the day of her arrest. The defendants presented several witnesses, however, who testified that they had seen Officers Subia and Cribari parked in a vehicle across from Martinez's house near mid-day on October 28. Two of the witnesses testified that when Martinez left the house and drove away, the officers followed Martinez's vehicle.[5]

Based principally on this conflicting testimony, as well as other discrepancies in the evidence concerning the details of the arrest, counsel for Martinez called into question the existence of the confidential informant. Martinez's attorney took the position that there was an issue raised as to the truthfulness of Cribari's testimony which bore directly on whether the officers had acted willfully in violating section 16-3-106, 8A C.R.S. (1986), and that the officers may in fact have been following Martinez from the time she left her home in northwest Denver up until the time of the alleged drug transaction outside the Mint Lounge in Adams County.[6] Therefore, Martinez sought disclosure of the informant so that it could be determined whether an informant existed and whether Officer Cribari's testimony correctly described the circumstances that resulted in the officers' journey to the Mint Lounge. Only when that information was fully developed, Martinez asserted, would the court be able to make an informed decision whether the officers' extraterritorial activities required suppression of the evidence seized as a result of her arrest.[7]

5. Also, although Officer Cribari testified that the only information he and Officer Subia possessed when they proceeded to the Mint Lounge was the terse message over Officer Cribari's pager that Chavez was at that location, another segment of the officer's own testimony casts doubt on the accuracy of that statement. When questioned by the prosecutor as to the basis for urgency in checking out the tip that Chavez was at the Mint Lounge, Officer Cribari responded,

A Not knowing when, what he was doing at the bar. Knowing what I knew about or with the information that I had concerning the defendant Chavez and defendant Martinez not being inside of the Mint Lounge, yes, I thought it was very important to get there as quick as possible.

Neither the trial judge nor Martinez, however, made reference to this possible inconsistency.

6. Chavez's attorney also suggested in argument that the informant could have been a witness to the events surrounding the arrest. The trial judge, however, apparently ordered disclosure on the sole ground that disclosure was necessary to resolve issues concerning Officer Cribari's credibility. There is nothing other than speculation to suggest that the informant was a witness to the events surrounding the arrest. The speculation is based on the single fact that the informant knew of Chavez's presence at the Mint Lounge and therefore might have been in a position to observe him in the parking lot at the time of his arrest. Mere assertions, without evidence to support them, are not enough to establish a reasonable basis in fact to believe that the informant could have been such a witness. *See People v. Bueno,* 646 P.2d 931, 936-38 (Colo.1982).

7. The Thornton officers were not present at the time of the arrest, so the arrest cannot be supported on that ground. *See People v. Schultz,* 200 Colo. 47, 611 P.2d 977 (1980). Nor is this a situation such as the one present in *People v. Florez,* 686 P.2d at 224, where we held that when Commerce City officers were in Englewood, unexpectedly saw a suspect for whom arrest warrants were outstanding, immediately notified

We conclude that the trial court adhered to the standards set forth earlier in this opinion and did not abuse its discretion in ordering disclosure under these circumstances. We have repeatedly recognized the discretion vested in a trial judge to order disclosure of an informant when the credibility of an officer is challenged in connection with a motion to suppress. *People v. Nunez*, 658 P.2d 879 (Colo.1983) (existence of informant or accuracy of informant's statements disputed), *cert. granted*, 464 U.S. 812, 104 S.Ct. 65, 78 L.Ed.2d 80 (1983), *cert. dismissed*, 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984); *People v. Martinez*, 658 P.2d 260 (Colo.1983) (same); *People v. Dailey*, 639 P.2d 1068 (Colo.1982) (existence of informant or accuracy of informant's statements disputed and question about credibility of informant and officer raised); *People v. Quintana*, 183 Colo. 81, 85–86, 514 P.2d 1325, 1327 (1973) (in order to support order for disclosure, judge's doubt concerning credibility of witness must be based on evidence); *DeLaCruz v. People*, 177 Colo. 46, 492 P.2d 627 (1972) (if judge doubts credibility of affiant concerning information allegedly supplied by informant, disclosure may be ordered); *see People v. Bueno*, 646 P.2d 931, 937 (Colo.1982) (court's doubt concerning truth of officer's assertion about the existence of an informant may justify disclosure in connection with a motion to suppress).

In the present case, production of the informant would have shed light on the issue of Officer Cribari's credibility concerning the informant and therefore would have been relevant and helpful to Martinez's defense. If Cribari's testimony was correct, the trial court could have concluded that the officers acted in good faith, although perhaps beyond their authority, and not in willful violation of section 16–3–106, when they elected to act on a fresh tip concerning the whereabouts of Chavez. On the other hand, if there was no informant and no tip, the trial court could have concluded that the officers had arrived at the Mint Lounge by following Martinez there after maintaining surveillance on her house, and that such purposeful travel into Adams County and the resulting arrests outside the officers' jurisdictional boundaries were in willful violation of the law and perhaps in violation of Martinez's constitutional rights. Contrary to the People's argument, there was an ample factual basis to call into question the existence of an informant and the content of that person's statements.

Even though the resolution of the questions of the existence of an informant and the content of the message received by the officers from any such informant may not be directly related to Martinez's guilt or innocence on the drug charges, it was central to the fair determination of Martinez's motion to suppress evidence. Certainly a court should not order disclosure of an informant if the defendant merely makes unsupported allegations. But where, as here, there is a reasonable basis in the evidence to question the credibility of an officer, a court may, in its discretion, order disclosure. *People v. Dailey*, 639 P.2d at 1076–77.[8]

We affirm the judgment of dismissal.

---

Englewood authorities requesting help, and then stopped and detained the suspect until Englewood officers arrived, there was no statutory violation. In that case we reasoned that by seeking and obtaining the aid of local officers, the Commerce City officers had stayed within the limits of their authority. Finally, the People have not suggested that the arrest of Martinez can be supported under statutory provisions for citizen arrests. *See People v. Wolf*, 635 P.2d at 216–17; *People v. Bloom*, 195 Colo. 246, 255, 577 P.2d 288, 292–93 (1978).

**8.** The People do not challenge the order for disclosure on the basis that the *in camera* proce-dures contemplated by the court were inappropriate. While we note that the presence of counsel at such a hearing, as contemplated by the trial court's order, varies from the procedure suggested in *People v. Dailey*, 639 P.2d at 1077 n. 11, we have no occasion to determine whether the trial court properly exercised its discretion in adopting the procedures contained in its order for disclosure. Also, the People do not challenge the appropriateness of dismissal, rather than some lesser sanction, as the remedy for the violation of the trial court's order of disclosure, so that issue is not before us.

VOLLACK, J., dissents.

ERICKSON and ROVIRA, JJ., join in the dissent.

VOLLACK, Justice, dissenting:

The majority holds that the trial court did not abuse its discretion in dismissing two counts of possession and distribution of a schedule I controlled substance when the prosecution refused to disclose the confidential informant. I respectfully dissent. The issue is whether the disclosure of the informant's identity would provide evidence necessary for the court to determine the validity of the extraterritorial arrest of the defendant and the possible suppression of heroin found in the possession of the defendant.

In my view, the facts of this case require us to apply the reasoning of *People v. Wolf*, 635 P.2d 213, 217 (Colo.1981), which held although the police in that case were acting outside the territorial limits of their authority under section 16–3–106, 8A C.R.S. (1986), and were not acting as private citizens under section 16–3–201, 8A C.R.S. (1986), nonetheless, they had the power to arrest persons for a crime committed in their presence. Here, the criminal drug transaction was personally observed by the two detectives. "If private citizens have the power to arrest persons who commit crimes in their presence, certainly a police officer, outside his territorial jurisdiction, has the same power." *People v. Wolf*, 635 P.2d at 216 (quoting *People v. Bloom*, 195 Colo. 246, 252, 577 P.2d 288, 293 (1978)). Probable cause measures the constitutionality of an arrest by law enforcement officers. The test is whether the facts available to the police officers support their belief that an offense has been or is being committed. Certainly, there can be no doubt that where a crime is committed in the presence of the officers, probable cause to arrest exists. *People v. Wolf*, 635 P.2d at 217. Such is the case here, and the fact that the officers in this case may have violated section 16–3–106 does not raise their action to a constitutional violation where the crime was committed

in their presence. Of import, the trial court did not rule on the suppression of the evidence for violation of section 16–3–106, 8A C.R.S. (1986). Rather, it dismissed the charges against the defendant for failure of the prosecution to disclose the confidential informant. Applying the reasoning of *People v. Wolf*, where the evidence was obtained from a crime committed in the officers' presence, there should be no suppression of the evidence. The disclosure of the confidential informant is inappropriate here.

I believe disclosure here is inappropriate based upon Colorado law. We have addressed two common situations involving informer privileges. *People v. Bueno*, 646 P.2d 931, 935 (Colo.1982). In the first situation, disclosure of an informant's identity arises in connection with the defendant's motion to suppress evidence, and in the second situation, disclosure arises in connection with the defendant's claim that the informer is an essential witness on the issue of guilt or innocence. Here, the defense asserted that the informant would provide valuable information concerning the officers' credibility as to whether or not the officers willfully exceeded their jurisdiction in violation of section 16–3–106. The trial court ruled that the informant's identity was essential to the merits of the suppression hearing where the officers' credibility was challenged concerning what the informant told them. Initially, however, the trial court stated that it did not believe that the credibility of the two Denver police officers had been seriously challenged. The record contains a conflict in the evidence involving the actions of the detectives regarding surveillance of Martinez's house during the morning of October 28, 1983. Nevertheless, the activities of the detectives in the afternoon of October 28, 1983, were uncontradicted leading up to the arrest in Adams County. It is undisputed that the detectives knew of the existence of the federal warrant issued for Chavez.

The question of whether an informant should be disclosed must be determined on the facts of each case. *People v. Marquez,*

190 Colo. 255, 258, 546 P.2d 482, 484 (1976). The determination must balance the public interest in protecting the flow of information to law enforcement authorities about criminal activity against the defendant's need to obtain evidence necessary for the preparation of a defense. *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); *People v. Korte*, 198 Colo. 474, 475, 602 P.2d 2, 3 (1979). The defendant must make an initial showing that the informant will provide information essential to the merits of the suppression ruling by establishing "a reasonable basis in fact to believe that an informer does not exist or, if he does, he did not relate to the police the information upon which the police purportedly relied *as probable cause for an arrest* or search." *People v. Bueno*, 646 P.2d at 936 (emphasis added). We have noted that disclosure protects the judicial process against abuses by false affidavits. *Id.*

The cases cited by the majority to support its decision that the confidential informant be disclosed in this case are inapposite. They concern information from confidential informants used to constitute probable cause for an arrest or search. In *People v. Bueno*, the credibility of a police officer was questioned with regard to whether the affidavits established probable cause for the arrest warrant. 646 P.2d at 937. In *People v. Dailey*, 639 P.2d 1068 (Colo.1982), we said that it was appropriate to challenge the veracity of an officer with regard to affidavits supporting a search pursuant to a warrant. 639 P.2d at 1076. Again, in *People v. Martinez*, 658 P.2d 260, 262 (Colo.1983), we ruled that the trial court did not abuse its discretion in resolving factual and credibility issues in favor of the defendant where the court found that a good faith basis existed for doubting the accuracy of the affidavit for the issuance of a search warrant. It was also appropriate to order disclosure of the confidential informant to challenge information provided by the informant to establish probable cause to search a defendant's home. *People v. Korte*, 198 Colo. at 476, 602 P.2d at 3. The issue in these cases was whether probable cause existed to either make an arrest or issue a search warrant. I agree, that in such a situation, challenging the veracity of a police officer was appropriate. In the instant case, however, the crime was committed within the presence of the police officers and, therefore, disclosure of the confidential informant would not go to whether there was probable cause for the arrest and is not appropriate.

Since the offense with which the defendant was charged was committed in the presence of the arresting officers, the arrest in this case did not violate constitutional restraints on unreasonable seizures and, therefore, the remedy of the exclusionary rule should not be imposed. *See People v. Wolf,* 635 P.2d at 217.

I believe the trial court abused its discretion in ordering the disclosure of the confidential informant and in dismissing the charges against the defendant when the prosecution refused to comply with that order and, accordingly, I would reverse.

I am authorized to state that ERICKSON and ROVIRA, JJ., join in this dissent.